Kohler, 2 Edw. Ch. 69. If he cannot give title, he must reimburse the purchaser for expenses. That the deposit, if existing, must be returned, is conceded. These analogies aid the purchaser in the present matter, but the conclusion that the plaintiff must bear the loss rests upon the broader fundamental considerations above discussed. Head v. Moore, 96 Tenn. 358, 34 S. W. 518, does not aid the plaintiff, as the first purchaser was not only enabled fully to withdraw his deposit, but also it was his duty to do so, as the money belonged to him.

In Kenaday v. Waggaman, 3 App. Cas. D. C. 412, a person was appointed trustee of property, with power and authority to manage and make sale of the same under the supervision and control of the court, and, so authorized, did sell land, and the sale was ratified by the court. All this seems to have been done without the knowledge and against the known will and consent of the beneficiaries, upon whose motion the sale was vacated, and the trustee discharged, with the order that he pay into court the sum received by him upon the sale. The trustee kept back some portion of such money, and upon a further sale by a new trustee the first purchaser claimed a lien upon the proceeds for the amount lost to him by the failure of the earlier trustee to return the same to the court. In that case the question was whether innocent persons against whom the trustee had transgressed should bear the loss which he had occasioned by his withholding from the purchaser. It was not a question between the person who had brought about the sale and the purchaser. In the present instance the very person who was responsible for every step taken in the proceeding and who made the sale for himself, and not as a trustee for others, is asked directly to indemnify the purchaser against the loss which his proceeding has caused.

The order should be affirmed, with $10 costs and disbursements. All concur.

---

### BLAIR v. BROOKLYN, Q. C. & S. R. CO.

(Supreme Court, Appellate Division, Second Department. December 30, 1910.)

CARRIERS (§ 303*)—INJURIES TO PASSENGERS.

Where a passenger was injured, owing to the starting of the street car while she was alighting, the carrier was liable, though the signal to start was given by a passenger; the same passenger having previously given starting signals, which was known to the conductor, who at the time of the accident was paying no attention to the passenger, but was engaged in counting transfers.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 1228½; Dec. Dig. § 303.*]

Appeal from Municipal Court, Borough of Brooklyn, Seventh District.

Action by Helen A. Blair against the Brooklyn, Queens County & Suburban Railway Company. From a judgment in favor of plaintiff, and from an order denying a motion for a new trial, defendant appeals. Affirmed.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes.

Argued before HIRSCHBERG, P. J., and WOODWARD, BURR, JENKS, and RICH, JJ.

James W. Carpenter, for appellant.
Henry E. Heistad, for respondent.

RICH, J.  As plaintiff, a passenger upon one of defendant's cars, was attempting to alight at a transfer station, the car was started, and she was thrown to the ground and seriously injured.  The evidence shows that the proper signal was given to the motorman to start the car, but the parties differ as to who gave such signal.  The only evidence on plaintiff's part relating to this question is that of her daughter, who testifies that she had alighted from the car and was assisting her mother to get off, when she heard two bells struck.  She cried out, "Wait a minute!" looked around, and saw the arm of the conductor raised; his hand being near to the bell cord.  This was after the signal of two bells for starting the car had been given.  She does not testify that she saw any one ring the bell, or to anything tending to show who did ring it, until after she had heard the bell strike and called out to the conductor to wait.  The conductor testifies that he did not give the signal to start, but that it was given by a passenger named Lewis, who was standing at his side on the rear platform of the car; that as the car started he heard a scream, and immediately gave one bell as a signal to stop the car.  It may be that when plaintiff's daughter saw the conductor's arm extended, as described by her, was after the signal to start the car had been given, and at the time when the conductor was giving the signal to stop.  Plaintiff's case is therefore barren of evidence showing who gave the signal that started the car.  In addition to the conductor's testimony, defendant produced two witnesses who were riding on the rear platform, who testified that the conductor did not give the signal to start the car, and that it was given by a passenger standing on the platform.

Defendant contends that the starting of the car was an unauthorized act of a fellow passenger of plaintiff, which did not impose liability on the defendant, and cites McDonough v. Third Avenue Railroad Co., 95 App. Div. 311, 88 N. Y. Supp. 609.  I do not regard that case as an authority, because it appeared that there was no suggestion that the conductor had reason to apprehend that a passenger would pull the bell, and no suggestion that the conductor was not properly attending to his duties; while in the case at bar it distinctly appeared that there was reason to apprehend the possibility of the accident that occurred.  The conductor himself testified that the bell had been pulled twice on that trip, by Lewis or some other passenger, as a signal to the motorman, before the plaintiff was injured, and that at the time she was alighting from the car he was counting transfers and giving no attention to anything else.  He was asked:

"Q. Wasn't it your duty to watch people getting off the car?  A. I didn't think it necessary.  I was counting transfers.  Q. Wasn't it important to see that passengers got off fully?  A. Yes.  Q. But you were not doing it, were you?  A. No; I was counting transfers."

This evidence removes the case at bar from the operation of the rule declared in the McDonough Case.

The learned trial court charged the jury:

"It is the duty of the conductor, as I said before, to see that people have reasonable opportunity to alight, and he was the man that was stationed on the car for that very purpose, and if he neglected his duty, and allowed some one else to pull the bell, that in itself would be negligence. It was his duty to see that she did have a reasonable chance to get off the car. So, if you are satisfied that she fell by reason of the car starting up before she had an opportunity to alight, even though Lewis did pull the bell, that would not relieve the railroad company of its negligence, if you find that the conductor did not do his duty in seeing to it that she had a reasonable chance to get off."

No exception was taken to this charge, nor was the court requested to charge otherwise. No reversible errors are shown (the objection to the evidence of the lay witness was not as to its competency), and the judgment and order must be affirmed, with costs. All concur.

---

BLAIR v. BROOKLYN, Q. C. & S. R. CO.

(Supreme Court, Appellate Division, Second Department. December 30, 1910.)

Argued before HIRSCHBERG, P. J., and WOODWARD, JENKS, BURR, and RICH, JJ.

